[No. 6399.]

THE PEOPLE v. FEEHAN.

1.  Statutes—Parol Evidence to Construe—Where a statute is plain and unequivocal, parol evidence as to the meaning of the words thereof, leading only to absurdity, is not to be accepted. —(538)

2.  Criminal Law—Derailing Train—Under the Act of April 8, 1895 (Laws 1895, c. 111, 3 Mills' Stat. § 1420, Rev. Stat.

§ 1884), the willful displacement of a switch in any manner, with intent to derail a train or any part of it, is a felony.—(538)

3. Writ of Error by the People—Judgment—Upon writ of error brought by the People under the statute (Laws 1907, c. 162, Rev. Stat. § 1997), error being found, the judgment of acquittal is not reversed, but the ruling of the court below is merely declared erroneous.—(538)

*Error to Denver District Court*—Hon. CARLTON M. BLISS, Judge.

Mr. GEORGE STIDGER, District Attorney, Mr. JOHN H. CHILES, Assistant District Attorney, for plaintiff in error.

No appearance for defendant in error.

Defendant in error was charged with violating § 1420, 3 Mills' Ann. Stats. (Rev. Supp.), Laws 1895, p. 252, § 1884, Rev. Stats., which, so far as necessary to consider, is as follows:

"Any person or persons who shall willfully and maliciously throw out a switch, remove, or in any manner loosen a rail, or place any obstruction on any railroad or tramway track operated in the State of Colorado, with the intention of derailing any passenger, freight or other train, * * * shall be adjudged guilty of a felony, and shall be imprisoned in the state penitentiary for a term of not less than ten years, and it may be extended to life imprisonment."

The testimony on the part of The People was to the effect that the employees of the Colorado & Southern Railway Company had made up a train of freight cars to go out upon the road of the Company, and that, when the train was being moved, two of the cars constituting it were thrown from the track. The testimony further disclosed, according to the confession of the defendant, that he willfully displaced or moved a switch, which was the cause of the cars being derailed, and that he did so with the intent to

derail the train. On behalf of the defendant, over the objection of the People, the court permitted evidence as to what the term "throw out," as used in the statute, meant. A witness called by the defendant was asked:

"Q.—Suppose you were given an order, as a switchman, to throw out a switch; what would you understand by that? A.—To throw out or remove it, which would be out of my line of duty.

"Q.—Are the words, 'throw out' ever used among switchmen to indicate the changing of a switch so that the cars would go on a side-track, or on another track, than the track they are on? A.—No, sir.

"Q.—Then you want the jury to understand that, if you were to receive an order like that, to 'throw out' a switch upon which a railroad train was running, that you would feel it your duty to go and get your shovel and pick and dig that switch out of the ties, and throw it out—pick it up bodily? Is that right? A.—Yes, sir.

"Q.—And that is what you mean by the words, 'throw out'; you want the jury to understand that? A.—Yes, sir."

At the conclusion of the testimony, the People requested the court to instruct the jury to disregard the evidence bearing on the subject of what was meant by the term "throw out," and advise them to the effect that throwing out a switch meant any act of throwing or displacing a switch, whereby a train, or any part thereof, is caused to leave the track upon which it is running, and that willfully and maliciously displacing a switch in any manner, with intent to cause a train or any part of it to leave the track over which it is moving, was a violation of the statute. This instruction was refused, and, in the course of its opinion, the court said:

"As the matter now stands, the court will direct

the jury to return a verdict for the defendant. There is no doubt in the mind of the court that the act charged in the information comes within the spirit of the statute; but such evidence as has been adduced here with reference to the meaning of these words, shows that they do not mean the act that has been proved, or that the testimony tends to prove; and in the judgment of the court, the language of that statute, as applied to this act, the act of the defendant, is, to say the least, ambiguous, and the defendant is entitled to any doubt, in the mind of the court, with reference to the exact meaning of the statute. If the legislature sees fit to use technical terms in describing criminal acts, it must at least use those technical terms correctly, if the act is to be enforced."

Under this ruling, the jury returned a verdict of "not guilty," and the defendant was discharged. By virtue of the provisions of § 1997, Rev. Stats., Laws of 1907, p. 351, the case has been brought here for review on error, at the instance of the People.

Mr. Justice Gabbert delivered the opinion of the court:

The ruling and judgment of the trial court was clearly erroneous. The testimony as to what was meant by the expression, "throw out," should not have been admitted. The statute speaks for itself. Its whole tenor and purpose is directed against train-wrecking, and as applied to the facts of this case, a willful and malicious displacement of a switch in any manner, with the intention of causing a train, or any part of it, to leave the track upon which it is running, is a violation of its provisions. The instruction should have been given.

*Ruling and Judgment of the District Court Held Erroneous.*

Mr. Justice Musser and Mr. Justice Hill concur.